# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

KYLIE ANNE PRILAMAN,       )
       )
    Plaintiff,       )
       )
v.       )     **CAUSE NO. 1:17-cv-00513-SLC**
       )
COMMISSIONER OF SOCIAL       )
SECURITY, *sued as Nancy A. Berryhill,*  )
*Acting Commissioner of Social Security,*  )
       )
    Defendant.       )

## OPINION AND ORDER

Plaintiff Kylie Anne Prilaman appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").[1]  For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  BACKGROUND

On March 17, 2009, Prilaman filed an application for DIB, alleging disability as of April 1, 2001.  (DE 11 Administrative Record ("AR") 20, 149-50, 156-58, 456).  Prilaman's application was denied initially and upon reconsideration.  (AR 74-81, 83-88).  At Prilaman's request, a hearing was held before an Administrative Law Judge on July 28, 2010.  (AR 20, 33-69).  The Administrative Law Judge rendered an unfavorable decision (AR 17-32), which eventually became the final, reviewable decision of the Commissioner (AR 1-16, 272).

On June 13, 2012, Prilaman timely filed a complaint in this Court, appealing the decision

---

[1] All parties have consented to the Magistrate Judge.  (DE 17); *see* 28 U.S.C. § 636(c).

of the Commissioner.  (*See* 1:12-cv-00191-RBC, DE 1).  On April 1, 2013, the parties filed a

joint motion to remand Prilaman's appeal to the Commissioner, stating:

> On remand, the [Administrative Law Judge] will reevaluate
> Plaintiff's residual functional capacity, providing an appropriate
> rationale for his determination, which will include explaining the
> weight given to all medical opinions of record, especially [F.
> Kladder, Ph.D.'s] and [Karen Lothamer C.N.S.'s], following the
> requirements of 20 C.F.R. § 404.1527 and SSR 06-03p.  The
> [Administrative Law Judge] will offer Plaintiff the opportunity for
> a new hearing and receive additional evidence.  After reevaluating
> the evidence, the [Administrative Law Judge] will issue a new
> decision regarding Plaintiff's disability application.

(1:12-cv-00191-RBC, DE 23; *see also* AR 669).  On April 2, 2013, the Court granted the parties'

joint motion for a remand.  (1:12-cv-00191-RBC, DE 24; *see also* AR 668).  Additionally, in or

around July 2012, Prilaman filed an application for SSI and a new application for DIB, which

were also denied initially and upon consideration.  (AR 456, 727-44, 746-59, 844-45, 851-56).

In November 2013, the Appeals Council remanded Prilaman's 2012 applications for SSI

and DIB and consolidated those claims with the claims in Prilaman's initial appeal that were

remanded by this Court.  (AR 456, 667-81).  On July 26, 2014, a hearing was held before

Administrative Law Judge William Pierson (the "ALJ").  (AR 544-93).  At the hearing,

Prilaman, who was represented by counsel, testified, as did vocational expert Marie Kieffer (the

"VE").  (AR 544).

On October 8, 2014, the ALJ issued an unfavorable decision, finding that Prilaman was

not disabled.  (AR 453-73).  Prilaman requested that the Appeals Council review the ALJ's

decision, and the Appeals Council denied her request, making the ALJ's decision the final,

appealable decision of the Commissioner.  (AR 446-52).

Prilaman filed the complaint in this action on December 21, 2017, seeking relief from the

Commissioner's final decision.  (DE 1).  In her appeal, Prilaman alleges that the ALJ:  (1) erred

in crafting the residual functional capacity ("RFC") by discrediting Ms. Lothamer's assessments of Prilaman's mental limitations in June 2010 and June 2014; and (2) did not incorporate Prilaman's moderate limitations in maintaining concentration, persistence, or pace in his hypothetical to the VE. (DE 20 at 15-24).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In determining whether Prilaman is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the Commissioner's listings, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v.*

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

*Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, the ALJ found that Prilaman had not engaged in substantial gainful activity since her alleged onset date. (AR 458-59). At step two, the ALJ found that Prilaman had the following severe impairments: major depressive disorder recurrent, and post-traumatic stress disorder. (AR 459-60).

At step three, the ALJ concluded that Prilaman did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 460-61). Before proceeding to step four, the ALJ determined that Prilaman's symptom testimony was "not entirely credible" (AR 462), and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, routine, repetitive tasks. She can maintain the concentration required to perform simple tasks, and can remember simple work-like procedures. She is limited to low-stress work (defined as requiring only occasional decision making and only occasional changes in the work setting); she can tolerate predictable changes in the work environment. She is limited to superficial interaction with coworkers, supervisors and the public (with superficial interaction defined as occasional and casual contact, not involving prolonged conversations; contact with supervisors would still involve necessary instruction and prolonged conversations with coworkers must not be necessary to task completion[)]; the claimant is best in an environment that does not involve tandem, shoulder-to-shoulder work activity. She is limited to basic reading such as address labels and lists.

(AR 461-62). Based on this RFC, the ALJ found at step four that Prilaman could not perform her past relevant work. (AR 471). The ALJ considered the testimony of the VE and other evidence in the record and determined at step five that Prilaman could perform other jobs in the

national economy that exist in significant numbers, and therefore, her applications for DIB and SSI were denied.  (AR 471-73).

## III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's.  *Id*.  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Id*.  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision.  *Id*. (citing *Ehrhart v. Sec'y of Health & Human Servs*., 969 F.2d 534, 538 (7th Cir. 1992)).

## IV.  ANALYSIS

### A.  Ms. Lothamer's Assessments

First, Prilaman contends the RFC determination is flawed because the ALJ did not provide good reasons for discounting Ms. Lothamer's assessment of Prilaman's limitations in June 2010 and June 2014.  For the reasons stated below, Prilaman's argument fails.

The RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence . . . ." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545, 416.945. The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Each medical opinion, other than a treating physician's opinion, must be evaluated pursuant to factors articulated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to determine the proper weight to apply to it. *See White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005). One factor the ALJ may consider is the extent to which an opinion is supported by the record. *Long v. Comm'r Soc. Sec.*, No. 2:15-CV-408-JEM, 2017 WL 1161012, at *3 (N.D. Ind. Mar. 28, 2017) (quoting SSR 96-5p, 1996 WL 374183, at *3, 5).

In September 2005, Prilaman submitted to examination at Park Center. (AR 293-95). Records describe Prilaman as "pleasant and cooperative, but clearly depressed . . . . Speech [was] clear and goal directed. She [was] oriented to person, place, and time," although she admitted to "overwhelming suicidal ideation." (AR 295). There was no evidence of disturbances in her thought process or thought content. (AR 295).

Prilaman was seen at Park Center again in April 2009. (AR 276-83). She presented as depressed, anxious, angry, and with poor judgment. (AR 279). However, there was "no

evidence of thought disturbance" and her "thought content and processes [were] within normal

range." (AR 279). She was diagnosed with a major depressive disorder, recurrent unspecified,

and cannabis dependence, and she was assigned a Global Assessment of Functioning ("GAF")

score of 53.[3] (AR 281).

In October 2009, Prilaman submitted to examination by Kenneth Bundza, Ph.D. (AR

349-52). Dr. Bundza conducted a series of tests and found that Prilaman demonstrated

"adequate" verbal and compression skills; she was "alert and oriented in all spheres;" her long-

term and immediate memory were intact; she was able to deal with basic mental arithmetic tasks

involving more than one function; and she possessed adequate common sense, although her

abstract thinking was somewhat compromised. (AR 350-51). Dr. Bundza concluded that "[t]he

results of this Mental Status Examination do not indicate the presence of any extreme cognitive

or intellectual deficiencies . . . . Prilaman is probably functioning somewhere in the low average

range of intelligence." (AR 351).

Dr. Kladder, as state agency psychologist, reviewed Prilaman's record and opined about

Prilaman's mental RFC on October 21, 2009. (AR 353-60). Notably, Dr. Kladder found that

Prilaman was "Not Significantly Limited" with regard to every criteria, except that she was

"Moderately Limited" with respect to "[t]he ability to maintain attention and concentration for

_____

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers). *Id*. A GAF score of 61 to 70 reflects some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id*.
  "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'*n, Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, various medical providers of record used GAF scores in assessing Prilaman, so the GAF is relevant to the ALJ's decision. *See id*. (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

extended periods of time" and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 353-54). Additionally, Dr. Kladder found that Prilaman experiences a moderate degree of limitation in both maintaining social functioning, and maintaining concentration, persistence, or pace. (AR 359).

On June 1, 2010, Ms. Lothamer, a psychiatric nurse, completed a "Mental Capacity Assessment" of Prilaman. (AR 443-45). In the assessment, Ms. Lothamer opined that Prilaman has extreme limitations with respect to the following functions: performing activities within a schedule; maintaining regular attendance; being functional within customary tolerances; sustaining an ordinary routine without special supervision; and completing a normal workweek without interruptions from psychologically based symptoms. (AR 443-44). Ms. Lothamer also opined that Prilaman has marked limitations in her ability to carry out, understand, and remember detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; and to perform at a consistent pace with a standard number and length of rest periods. (AR 443-44). Ms. Lothamer determined that Prilaman would miss three days of work every month. (AR 444).

On September 11, 2012, at the request of the state agency, Wayne J. Von Bargen, Ph.D., examined Prilaman. (AR 985-87). Among Dr. Von Bargen's findings, he noted that Prilaman was oriented as to the date, month, and year; she was able to recall five digits forward and three digits backward, but other tests indicated delayed recall; she performed several simple arithmetic calculations; and her "cognitive functioning appear[ed] to be grossly intact, consistent with borderline intellectual functioning." (AR 986-87).

On February 29, 2012, John M. Musgrave, Psy.D., HSPP, examined Prilaman on a referral by the Allen County Adult Probation Department. (AR 1095-1100). Dr. Musgrave performed the Kaufman Brief Intelligence Tests-2nd Edition ("KBIT-2"), the Personality Assessment Inventory ("PAI"), the Millon Clinical Multiaxial Inventory-III ("MCMI-III"), and the Trauma Symptom Invetory-2nd Edition ("TSI-2"). (AR 1095). Prilaman scored below average on the KBIT-2, and the TSI-2 showed problems with personality functioning. (AR 1098-99). She completed the PAI "in valid fashion" but exhibited "defensiveness about some shortcomings while exaggerating certain other problems," such that Dr. Musgrave opined that she was putting forth extra effort to endorse significant levels of symptomology. (AR 1099; *see also* AR 466). In fact, her scores in the areas of anxiety, tension, apprehension, and irrational fears were "higher than what would be expected even in the clinical population." (AR 1099; *see also* AR 466). Similarly, the MCMI-III indicated that Prilaman had "a broad tendency to magnify the level of experienced illness or a characterological inclination to complain or be self-pitying. In addition, her manner of completing the MCMI-III may [have been] a cry for help." (AR 1099; *see* AR 466).

On June 11, 2012, Prilaman submitted to examination at Park Center. (AR 920-24). Records indicate that Prilaman "may be struggling with thinking problems, anticipating consequences, or concentration," but that her "thought content and process [were] within normal range." (AR 924). Similarly, Park Center records from October 1, 2012, state that Prilaman was calm, relaxed, oriented times three, and "very organized and detailed." (AR 1006).

In October 2012, state agency psychologist Ann Lovko, Ph.D., reviewed Prilaman's record. (AR 629). Dr. Lovko assigned Prilaman moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or

peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere basic standards of neatness and cleanliness. (AR 629). Dr. Lovko opined that Prilaman otherwise experienced no significant mental limitations. (AR 628-29).

Additionally, Dr. Lovko gave weight to records assigning a GAF score of 55. (AR 629).

Finally, Dr. Lovko stated:

> The evidence suggests that claimant can understand, remember, and carry-out unskilled tasks. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to tasks for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

(AR 630, 639). In February 2013, state agency psychologist Kenneth Neville, Ph.D., reviewed Prilaman's record and confirmed Dr. Lovko's findings. (AR 650-52).

Prilaman was incarcerated from approximately January to August 2013. (AR 1023-71; *see generally* AR 467-68). Medical records during that time indicate that Prilaman was examined by a psychiatrist or nurse practitioner on a nearly weekly basis for eight months. (AR 1023-71). During these examinations, Prilaman was assigned GAF scores between 66 and 70. (*See, e.g.*, AR 1024, 1026, 1032, 1034, 1043, 1047). Records generally described Prilaman as "oriented to person, place, time, and situation"; her behavior and psychomotor were "unremarkable"; her memory was intact; her intellect was average; her reasoning, judgment, and insight were fair; her thought process was logical; and her thought content was unremarkable. (*E.g.*, AR 1025-26, 1033-34, 1042-43, 1063; *but see* AR 1038-39). Prilaman was assessed as being free of mental illness or not being disabled on three occasions (AR 1029, 1030, 1064, 1071), as having a "psychiatric disorder that causes some functional impairments" on three occasions (AR 1031, 1037, 1044), and was never assessed as having "significant functional impairments" or "extreme functional impairments" (*see* AR 1029, 1030, 1031, 1037, 1044, 1064,

1071).  Importantly, Prilaman was not taking any medications while in prison.  (*See* AR 1024-71; *see also* AR 467-68).

In June 2014, Ms. Lothamer completed a "Mental Impairment Questionnaire."  (AR 1103-07).  In her assessment, Ms. Lothamer reviewed Dr. Von Bargen's September 2012 evaluation, Dr. Musgrave's evaluation of February 2012, Park Center treatment notes, and her own June 2010 assessment.  (AR 1103).  Ms. Lothamer opined that Prilaman's symptoms would worsen if she worked for eight hours a day, five days a week, due to her trouble being around people and flashbacks.  (AR 1104).  Ms. Lothamer confirmed her previous determination that Prilaman's symptoms would likely cause her to miss three days of work every month.  (AR 1104).  Ms. Lothamer responded to the query of how Dr. Musgrave's findings impacted her determinations, but her response is not legible.  (AR 1105).

The ALJ assigned little weight to Ms. Lothamer's 2010 and 2014 assessments, finding the limitations "more extreme than what is justified by the Park Center treatment notes or the rest of the record."  (AR 469).  In particular, the ALJ observed that:  Prilaman was assigned GAF scores between 53 and 70 during the relevant period; she responded positively to medications; she was looking for a job in 2009, indicating that she did not consider herself completely disabled; Ms. Lothamer's opinions were not based on clinical tests or exams; Prilaman saw Ms. Lothamer in order to receive DIB, not for treatment; and Ms. Lothamer did not explain how Dr. Musgrave's psychological evaluation and testing affected her 2014 assessment, despite acknowledging that she reviewed it.  (AR 469-70).

Instead, the ALJ relied on the opinions of medical sources of record, explaining that:

> Greater weight was assigned to the actual objective medical
> findings by Dr. Bundza regarding memory, orientation, lack of
> emotional distress, communication, appearance, hygiene, and other
> factors.  Greater weight also was given to Dr. Von Bargen's

findings of a GAF of 55, which is consistent with the GAFs assessed at Park Center. Great weight also was given to the many objective medical findings and observations actually recorded in the Park Center notes as well as in the prison records. Significant weight was given to Dr. Kladder's opinion, although the above residual functional capacity is more restrictive tha[n] that assessed by Dr. Kladder, due to the subsequent evidence. The residual functional capacity is generally consistent with the state agency psychologists' opinion given in the subsequent claim.

(AR 470).

Prilaman argues that the ALJ's opinion is flawed because: the ALJ did not consider evidence that Prilaman's limitations are more severe than the GAF scores she received; the ALJ was not permitted to discredit Ms. Lothamer's opinions merely because Prilaman responded positively to medication; the ALJ should not have negatively considered Prilaman's statements that she was looking for work; Ms. Lothamer's opinions were based on clinical findings and testing; and Dr. Musgrave's finding that Prilaman was magnifying her symptoms does not invalidate Ms. Lothamer's opinions.

Prilaman is correct that the ALJ erred in discrediting Ms. Lothamer's opinion to some extent. In particular, the ALJ did not explain how Prilaman's statements that she was looking for employment in 2009 undermined the credibility of Ms. Lothamer's report.[4] "The Seventh Circuit has previously recognized that a 'claimant's desire to work is not inconsistent with her inability to work because of a disability.'" *Rucker v. Berryhill*, No. 17 C 5420, 2018 WL 4110740, at *4 (N.D. Ill. Aug. 29, 2018) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir.

---

[4] Additionally, the Commissioner does not respond to Prilaman's argument that the ALJ erred by discrediting Ms. Lothamer's opinions based on Prilaman's job search. Accordingly, the Commissioner has waived her opportunity to respond to this argument. *See Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (explaining in a social security appeal that undeveloped arguments are deemed waived) (citing *Kochert v. Adagen Med. Int'l, Inc*., 491 F.3d 674, 679 (7th Cir. 2007)).

2015)). Indeed, a claimant that insists on looking for employment despite claiming to suffer from a disability might simply indicate "a strong work ethic or overly-optimistic outlook rather than an exaggerated condition." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *see also Rein v. Berryhill*, No. 16 C 10410, 2018 WL 1915489, at *3 (N.D. Ill. Apr. 23, 2018) (citations omitted).

The ALJ merely stated that "notes reflect that claimant reported several times in 2009 that she was looking for a job, which indicates that she did not consider herself totally disabled." (AR 469). The ALJ did not consider that Prilaman may have an "overly-optimistic outlook." *Ghiselli*, 837 F.3d at 778. And while Prilaman's supposed "belief that she was not totally disabled" may bear on the *credibility of her symptom testimony*, the ALJ did not connect this supposed belief to the conclusion that *Ms. Lothamer's report was not credible*. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). This lack of reasoning constitutes error. *Rucker*, 2018 WL 4110740, at *4.

Prilaman is also correct, and the Commissioner concedes, that the ALJ erred in stating that Ms. Lothamer did not explain how Dr. Musgrave's findings of symptom magnification affected her opinion. Indeed, Ms. Lothamer explained her reasoning for disagreeing with Dr. Musgrave, at least in part. (DE 21 at 5 n.3 (citing AR 469-70, 1099-1100, 1105)).

Accordingly, the ALJ improperly discounted Ms. Lothamer's assessments. However, this error is harmless because it does not "ultimately impact the outcome" of the ALJ's determination. *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)). That is, the ALJ provided other good reasons for discrediting Ms. Lothamer's 2010 and 2014 assessments, and supported the limitations assigned in the RFC with substantial evidence.

Specifically, the ALJ relied on the opinions of medical sources—Dr. Bundza, Dr. Von Bargen, Dr. Musgrave, and the state agency psychologists—in crafting the RFC. Each of these sources constitutes an "acceptable medical source," which is entitled to controlling weight if it is generally consistent with the evidence of record. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). In determining how much weight to assign to medical opinions, other than those from a treating medical source, the ALJ should consider: "1) the treatment relationship including the length, nature, and extent of the relationship and the frequency of examinations; 2) the supportability and consistency of the opinion with the record as a whole; 3) whether the physician is a specialist; and any other factors the claimant or others bring to the ALJ's attention." *Wyatt v. Astrue*, No. 1:11-CV-00874-MJD, 2012 WL 2358149, at *4 (S.D. Ind. June 20, 2012) (citing 20 C.F.R. § 404.1527(c)).

The ALJ assigned "greater weight" to the opinions of the medical sources of record because they were consistent with each other and with the record. (AR 469). For example, the Dr. Lovko and Dr. Neville confirmed Dr. Kladder's opinion that Prilaman's impairments caused moderate limitations in social functioning (AR 359, 630, 652), and in maintaining concentration (AR 353-54, 630, 639, 652). Additionally, Dr. Bundza, Dr. Von Bargen, and Dr. Musgrave[5] all opined that Prilaman has less than marked limitations in cognitive functioning or memory. (AR 350-51, 986-87, 1099).

Furthermore, as the ALJ observed, the opinions of the medical sources are largely consistent with the GAF scores—between 53 and 70, indicating mild to moderate symptoms— that were assigned to Prilaman (including those assigned by Ms. Lothamer). (*See, e.g.*, AR 332, 398, 928, 987, 1024-71, 1084; *see also* AR 469). Indeed, medical records from Prilaman's

---

[5] While Dr. Musgrave noted that Prilaman's test results indicated major depression and major thought disorders, he opined that these results were not credible due to Prilaman magnifying her symptoms. (AR 1099).

incarceration and Park Center demonstrate that Prilaman's mental limitations were moderate at worst, even when she did not take medication for eight months.

Accordingly, the ALJ limited Prilaman to simple, routine, repetitive tasks; simple work-like procedures; low-stress work; superficial interactions with coworkers and supervisors; "basic reading such as address and labels and lists"; and prohibited "prolonged conversations with coworkers" to complete tasks. (AR 461-62). Therefore, the ALJ was permitted to assign "greater weight" to the opinions of the medical sources as they were consistent with each other, and with the record as a whole. *See Wyatt*, 2012 WL 2358149, at *4; 20 C.F.R. §§ 404.1527(c), 416.927(c).

To the extent that Ms. Lothamer's 2010 and 2014 assessments contradict the medical sources of record, her opinion is considered an "other source" under the regulations, and therefore, it is not entitled to controlling weight. *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) ("Only acceptable medical sources, such as licensed physicians, can be characterized as treating sources whose opinions are generally entitled to controlling weight." (citation and internal quotation marks omitted)); *see Wyatt*, 2012 WL 2358149, at *6; 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006) (explaining that opinions from "other sources" should be evaluated using the applicable factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 for weighing medical opinions from "acceptable medical sources"). Nevertheless, the ALJ was required to evaluate Ms. Lothamer's opinion by applying "the same criteria listed in § 404.1527(d)(2)." *Phillips*, 413 F. App'x at 884 (citations omitted). Regulations provide:

> [I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for

the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). However, ultimately, the ALJ "has discretion to determine the proper weight to accord opinions from 'other sources' . . . ." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted).

Ms. Lothamer did have a more extensive "treatment relationship including the length, nature, and . . . frequency of examinations," *see Wyatt*, 2012 WL 2358149, at *4, than any medical source of record; a factor that may favor assigning greater weight to her opinion. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1) (advising that "it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source"). However, as the ALJ observed, the length and nature of Ms. Lothamer's treatment relationship did not overcome the fact that her assessments in 2010 and 2014 were generally inconsistent with medical evidence of record.[6] (AR 469-70).

For example, the state agency psychologists opined that Prilaman could "carry-out unskilled tasks," and "attend to tasks for sufficient periods of time to complete tasks." (AR 630, 652). This contradicts Ms. Lothamer's opinion that Prilaman experiences "extreme" limitations

---

[6] Prilaman also argues that the ALJ failed to discuss two "Adult Needs and Strengths Assessment" ("ANSA") indicating that she has "severe" or "disabling" functional limitations in "Employment" and "Living Skills." (AR 931, 1073-74). Prilaman is correct that the ALJ did not discuss these reports. Nevertheless, remand is not warranted to consider the ANSAs. It is well settled that "[t]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature . . . .*" *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). As discussed *infra*, the ALJ provided good reasons for rejecting the type of severe limitations assigned by Ms. Lothamer, which correspond to the limitations assigned in the ANSAs. *See Busking v. Colvin*, No. 11 C 1598, 2013 WL 4401380, at *18 (N.D. Ill. Aug. 14, 2013) (holding that an ALJ must discuss evidence that is both "relevant and uncontradicted"). Accordingly, the ANSAs are not "an entire line of evidence contrary to the ruling," as the ALJ provided ample reasoning why Prilaman's impairments in social and work-place settings were not disabling. *Id.* (citation and internal quotation marks omitted); *see Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) ("In making her decision, an ALJ must articulate, at some minimum level, her analysis of the evidence." (citation omitted)).

in "sustain[ing] an ordinary routine without special supervision."  (AR 443).  And whereas Ms.

Lothamer opined that Prilaman experiences "extreme" limitations in completing a normal

workday or workweek without interruptions form psychologically based symptoms (AR 444),

Dr. Kladder found only "moderate limitations" in these areas (AR 359).  Additionally, two

medical sources assigned Prilaman no limitations in cognitive functioning or memory (AR 350-

51, 986-87), whereas, Ms. Lothamer assigned marked limitations in these areas (AR 443-45).

Finally, Ms. Lothamer's opinion that Prilaman experiences marked limitations in social

interactions with supervisors and coworkers and in adjusting to her work setting (AR 444), is

undermined by the state agency psychologists' findings that Prilaman could relate on at least a

superficial basis on an ongoing basis with co-workers and supervisors and manage the stresses

involved with work (AR 359, 630, 652).  Thus, the ALJ did not err in assigning limited weight to

Ms. Lothamer's opinion as it was inconsistent with substantial evidence of record.

Furthermore, Ms. Lothamer provided limited, if any, clinical support for her 2010 and

2014 opinions.  In particular, Ms. Lothamer's 2010 assessment was based on "Historical Medical

Records," unspecified "Psychological/Psychiatric Evaluation," and "Patient Report."  (AR 445).

Similarly, Ms. Lothamer's 2014 assessment references her treatment notes, the clinical findings

of other medical sources, and her own 2010 assessment of Prilaman.  (AR 1103).  In stark

contrast, Dr. Musgrave's assessment, to which the ALJ assigned greater weight, applied four

clinical tests, and Dr. Bundza and Dr. Von Bargen based their assessments, in part, on Prilaman's

ability to recall digits and perform arithmetic.  Thus, the ALJ correctly found that the medical

source opinions were based on "supporting evidence and [provided] a better explanation" based

on objective clinical testing.  (AR 469-70); *see* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

Finally, the ALJ noted that Ms. Lothamer's assessments were not consistent with medical

records indicating that Prilaman responded well to medication. Prilaman argues that this was error because the ALJ ignored five occasions when Ms. Lothamer prescribed Prilaman new medication or changed her dosage. (DE 20 at 18-19 (referencing AR 364, 394, 914, 937, 948)).

However, Prilaman ignores that during two of these visits, Ms. Lothamer reported that Prilaman's medications had positive effects. (*See* AR 364 ("[Prilaman] states that Abilify has helped some . . . ."); 912 ("Feels like Zoloft has helped but would benefit from dose increase as well as something for sleep . . . ."). In another instance that Prilaman cites, new medication was prescribed because it was Prilaman's first appointment with Ms. Lothamer since she was released from prison, where she did not have access to medication. (*See* AR 945). Thus, Prilaman has mischaracterized the record somewhat.

Prilaman also argues "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [Ms. Lothamer's] treatment notes." (DE 20 at 18-19 (citing *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)). However, the ALJ was clearly aware of Ms. Lothamer's treatment notes, which he cited several times in the 10-page RFC analysis (*see* AR 461-71), even though he did not specifically mention each symptom documented in the notes. And, as discussed *supra*, the ALJ provided good reasons for assigning little weight to Ms. Lothamer's assessments in 2010 and 2014, which incorporated her treatment notes. Thus, the ALJ's failure to discuss the details of Ms. Lothamer's treatment notes is excused because the "ALJ need not mention every snippet of evidence in the record," where, as here, he connects the evidence to the conclusion. *Arnett*, 676 F.3d at 592.

Ultimately, the Court is satisfied that the ALJ's assignment of limitations is supported by evidence of record and that the ALJ articulated his analysis at more than "a minimum level," *Ray*

*v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted).  Therefore, the Court will not order a remand to reconsider the ALJ's RFC determination.

### B.  The Hypothetical to the VE

Prilaman's second argument is that the ALJ found that she had moderate limitations in maintaining concentration, persistence, or pace at step three, but failed to incorporate the moderate limitations in the RFC and in the hypothetical to the VE.

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).  Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas":  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(1)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001).

By way of a brief summary, when assessing the "paragraph B" criteria at steps two and three, the ALJ concluded that Prilaman had moderate difficulties in maintaining concentration, persistence, or pace, as well as mild restrictions in activities of daily living and in maintaining social functioning.  (AR 460-61).  However, the ALJ also concluded that these limitations did not preclude Prilaman from performing simple work and stated that he would give a more detailed account of Prilaman's mental limitations in the RFC.  (AR 461).  The ALJ assigned the following limitations in Prilaman's mental RFC:

She is limited to simple, routine, repetitive tasks. She can maintain the concentration required to perform simple tasks, and can remember simple work-like procedures. She is limited to low-stress work (defined as requiring only occasional decision making and only occasional changes in the work setting); she can tolerate predictable changes in the work environment. She is limited to superficial interaction with coworkers, supervisors and the public (with superficial interaction defined as occasional and casual contact, not involving prolonged conversations; contact with supervisors would still involve necessary instruction and prolonged conversations with coworkers must not be necessary to task completion[)]; the claimant is best in an environment that does not involve tandem, shoulder-to-shoulder work activity. She is limited to basic reading such as address labels and lists.

(AR 461-62). The ALJ's hypothetical to the VE included the following relevant exchange:

Q. Okay. Thank you. First hypothetical very simple then I'm going to ask a couple more questions. Please assume a hypothetical individual of Claimant's age, education, and past work. Such hypothetical individual is limited to simple, routine, repetitive tasks. Individual can maintain concentration.

. . . .

Q. [The hypothetical individual would be] [r]equired to perform simple tasks and remember simple work like procedures. The individual is limited to basic reading such as required for address labels and lists. Individual is limited to work within a low stress job that requires only occasion[al] decision-making, only occasion[al] changes in the work setting. Individual can tolerate predictable changes in the work environment. The individual is limited to superficial interactions[s] with coworkers, supervisors, and the public. Superficial is defined as occasion[al], casual contact. No prolonged conversations. Contact with supervisors would still involve necessary instruction. [Superficial] [i]s not contact with – or conversation with – prolonged conversation with coworkers [that] is not necessary to task completion. Best in an environment that does not involve tandem shoulder-to-shoulder work activity. Could such an individual perform the Claimant's past work?

A. No. These limitations would eliminate the past work.

Q. Would there be other work that such individual could perform?

A. Yes. Considering these limitations at the medium level, the job of Cooks Helper could be performed . . . . [T]he job of Conveyor Tender could be performed . . . . [T]he job of Cleaner could be performed . . . .

(AR 588-89). Prilaman argues that the ALJ's hypothetical to the VE failed to incorporate the moderate difficulties in maintaining concentration, persistence, or pace that the ALJ discussed at step three because the hypothetical only limited Prilaman to "simple, repetitive tasks" or "unskilled work."[7]

The Seventh Circuit has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). This is because, in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id*. at 620 (finding that a restriction to repetitive tasks with simple instructions did not necessarily account for the claimant's depression-related problems in concentration, persistence, and pace (collecting cases)); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (finding that a limitation to "simple, repetitive tasks" did not adequately account for the claimant's concentration problems arising from depression and borderline intellectual functioning); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (concluding that a limitation to unskilled work did not

---

[7] Prilaman also asserts that "the VE testified that he reviewed only part of the record made available to him which was Prilaman's vocational background." (DE 20 at 22). However, a transcript of the hearing shows that the VE did not lack any information regarding Prilaman's vocational background (*see* AR 586 (answering "Yes," the VE had reviewed Prilaman's vocational background)); rather, the VE only lacked additional information from Ms. Lothamer (*see* AR 586 ("You also have additional information coming from -- I believe from Ms. Lothamer at Park Center.")). Prilaman does argue that the failure to consider information from Ms. Lothamer constitutes error, and therefore, her argument fails.

sufficiently account for the claimant's concentration problems stemming from depression and a psychotic disorder). Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619.

"Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985). Accordingly, the RFC and hypotheticals "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (emphasis added) (citations omitted); *see Yurt*, 758 F.3d at 858 (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities").

In addressing complexity in the hypothetical to the VE, the ALJ stated that Prilaman could "perform simple tasks and remember simple work like procedures. The individual is limited to basic reading such as required for address labels and lists." (AR 588). This characterization of Prilaman's ability is consistent with the RFC. (AR 461-62 (limiting Prilaman to maintaining "the concentration required to perform simple tasks, and can remember simple work-like procedures," and limiting her to "basic reading such as address labels and lists")). Similarly, in describing Prilaman's ability to stick with a given task over a sustained period, the ALJ stated that Prilaman could "maintain concentration" but limited her to "simple" tasks (AR 588), which corresponds to the assigned RFC (AR 461 ("She can maintain the concentration to perform simple tasks and can remember work-like procedures.")).

In summary, the ALJ did not run afoul of the Seventh Circuit's instruction in *O'Connor-Spinner* to address both the complexity of the tasks the claimant can perform and the claimant's ability to stick with the tasks over a sustained period. 627 F.3d at 620. Furthermore, the ALJ supported his assessment of Prilaman's ability to maintain concentration, persistence, or pace with the opinions of the state agency psychologists that Prilaman has moderate limitations in these areas. (AR 359, 630, 652). Thus, Prilaman's argument that the ALJ did not account for her limitations in the hypothetical to the VE or in the RFC lacks merit.

Therefore, contrary to Prilaman's assertions, the Court need not order a remand based on the ALJ's account of Prilaman's mental limitations in the RFC and in the hypotheticals posed to the VE at step five. *See O'Connor-Spinner*, 627 F.3d at 620-21.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Prilaman.

SO ORDERED.

Entered this 8th day of January 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge